IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Michael Dean Heflin**                                                                                                   **Plaintiff**

**v.**                                            **No. 4:13-CV–053-KGB-JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                                          **Defendant**

Report and Recommended Disposition

Instructions

The following report and recommended disposition was prepared for U.S. District Judge Kristine G. Baker.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this report.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Baker may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Report and Recommended Disposition

Michael Dean Heflin seeks judicial review of the denial of his second application for disability benefits.[3] Heflin last worked as a machine operator and a tile installer.[4] He first applied for disability benefits in December 2008, shortly after his release from incarceration.[5] Because the first application was denied on May 7, 2010,[6] this case considers whether Heflin was disabled beginning May 8, 2010.[7]

**The Commissioner's decision**. After considering the second application, the Commissioner's ALJ determined that Heflin has severe impairments — endocarditis, degenerative disc disease of lumbar spine, mood disorder, antisocial personality disorder, and polysubstance dependence[8] — but he can do some light work, to include his past work as a machine operator.[9] Because a person who can do his past work is not

---

[3]SSA record at pp. 166 & 171.

[4]*Id*. at pp. 200 & 210.

[5]*Id*. at pp. 69, 91 & 684.

[6]*Id*. at pp. 33 & 91.

[7]*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand.").

[8]SSA record at p. 18.

[9]*Id*. at pp. 21 & 25.

disabled,[10] the ALJ denied the application.

After the Commissioner's Appeals Council denied a request for review,[11] the decision became a final decision for judicial review.[12]  Heflin filed this case to challenge the decision.[13]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14]  This report identifies an error that undermines the decision and explains why this case should be remanded for new vocational evidence.

**Heflin's allegations**.  Heflin's allegations are poorly articulated, but liberally construed, Heflin complains about the following aspects of the decision: (1) the ALJ's consideration of his drug addiction in evaluating his credibility, (2) the lack of discussion

---

[10]20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[11]SSA record at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

of his PCP's treatment notes, and (3) the ALJ's use of the vocational evidence. He also suggests the Appeals Council erred in failing to review the decision after he submitted mental health records. For these reasons, he maintains substantial evidence does not support the ALJ's decision.[15]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Heflin can do some light work, to include his past work as a machine operator.[16] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[17] In this case, the ALJ placed the following limitations on light work: (1) occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and (2) work where interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote, involves few variables, requires little judgment, and supervision is simple, direct and concrete.[18]

---

[15] Docket entry # 12.

[16] *See Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citations omitted) ("Substantial evidence exists if 'a reasonable mind would find such evidence adequate.' Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision.'"); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[17] 20 C.F.R. §§ 404.1567(b) & 416.967(b).

[18] SSA record at p. 21.

**Whether Heflin can work within the ALJ's parameters**. An ALJ's determination about a claimant's ability to work must be supported by medical evidence; a claimant's subjective allegations are not enough to prove he is disabled.[19] The medical evidence in this case includes treatment records that precede the relevant time period,[20] but those records provide relevant background for Heflin's claim. The remote evidence establishes a long history of illicit drug use, to include intravenous (IV) use.[21] That history resulted in serious illness on May 4, 2010, when Heflin was hospitalized with endocarditis.

**Endocarditis**. Endocarditis is an infection of the inner lining of the heart. The type that Heflin had — methicillin-susceptible staphylococci aureus endocarditis[22] — "is overwhelmingly a disease of injection drug users."[23] "Patients may present acutely ill with high fever and marked systemic toxicity (acute bacterial endocarditis), or they may

---

[19] 42 U.S.C. § 423 (d)(5)(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. §§ 404.1508 & 416.908.

[20] The relevant time period is from May 8, 2010 — the day after the denial of the first application — to February 17, 2012 — the day of the challenged decision.

[21] SSA record at p. 771.

[22] *Id*. at p. 399 (per infectious disease doctor, "Patient's bacteremia and endocarditis is due to Methicillin SENSITIVE Staph aureus (NOT MRSA)").

[23] Rob Moss & Brad Munt, *Injection Drug Use & Right Sided Endocarditis*, 89 Heart 577, 577 (2003). *See also* Barton E. Giessel, Clint J. Koenig & Robert L. Blake, Jr., *Mgmt. of Bacterial Endocarditis*, 6 Am. Fam. Physician 1725 (Mar. 15, 2000) ("S. aureus is a common cause of bacterial endocarditis in patients with prosthetic valves and in injection drug users.").

present with vague, nonspecific symptoms (fatigue, weakness, malaise, anorexia, arthralgias, low-grade fever) lasting weeks to months (subacute bacterial endocarditis)."[24] Heflin presented with both types of symptoms.[25] Heflin's history of staph infections suggests he was infected for several months,[26] but at the time of his diagnosis, he was acutely ill.

Heflin was hospitalized for 14 days and treated with high-dose IV antibiotics.[27] After hospital discharge, he received IV antibiotics for another six weeks, using a peripherally inserted central catheter or PICC line. Numerous providers warned that using the PICC line for illicit drugs would worsen his infection.[28] Subsequent drug screens indicate Heflin heeded the warning.[29]

Most patients with Heflin's type of endocarditis can be cured with treatment.[30]

---

[24]Barton E. Giessel, Clint J. Koenig & Robert L. Blake, Jr., *Mgmt. of Bacterial Endocarditis*, 6 Am. Fam. Physician 1725 (Mar. 15, 2000).

[25]SSA record at pp. 557-63 & 574.

[26]*Id*. at pp. 247-51.

[27]*Id*. at pp. 345 & 574.

[28]*Id*. at p. 345.

[29]*Id*. at p. 727.

[30]*See* Barton E. Giessel, Clint J. Koenig & Robert L. Blake, Jr., *Mgmt. of Bacterial Endocarditis*, 6 Am. Fam. Physician 1725 (Mar. 15, 2000) ("By following the recommendations, most patients with bacterial endocarditis can be cured."); Rob Moss & Brad Munt, *Injection Drug Use & Right Sided Endocarditis*, 89 Heart 577, 579 (2003) (Heflin's

Heflin had a few problems with the PICC line,[31] but no complications. He was supposed to followup with his infectious disease doctor,[32] but he never returned. Considering the seriousness of his illness, failing to return indicates treatment cured Heflin's endocarditis. By at least September 2010, there was no evidence of endocarditis.[33]

The ALJ identified endocarditis as a severe impairment, but there is no evidence of endocarditis for most of the relevant time period. A reasonable mind would accept the evidence as adequate to support the ALJ's decision because the medical evidence shows endocarditis impaired Heflin's ability to work for a few months. A few months is insufficient to establish disability for the purpose of obtaining disability benefits.[34]

**Degenerative changes in the spine**. The medical evidence establishes no physical impairment by endocarditis, but diagnostic imaging of the spine shows some degenerative changes that could limit Heflin's ability to work. The imaging shows mild

---

type of endocarditis "is generally regarded as having a relatively benign prognosis….Most will survive even if they leave hospital before the full course of treatment has been completed.")

[31]SSA record at p. 610 (PICC line replaced).

[32]Id. at p. 351 (instructing Heflin to "followup with infectious disease Dr Vyas in 6 weeks") & p. 399 (infectious disease doctor plans to see "patient back in 6-8 weeks in ID clinic for followup").

[33]Id. at p. 660 (normal chest xray, labs and EKG).

[34]42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits).

to moderate degenerative changes, canal narrowing, and disc protrusions at levels L4-5 and L5/S1 which could cause some low back pain, but the record includes no evidence of stenosis or nerve root compression to substantiate a claim of disabling back pain.[35] The medical experts opined that Heflin can do light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling.[36]

Heflin identified his primary problem as being unable to stand or stoop like he could in the past.[37] The diagnostic imaging supports limitations in stooping, but not standing. A reasonable mind would accept the evidence as adequate to show Heflin can work within the ALJ's parameters, because back pain from degenerative changes can limit a person's ability to do certain postural functions and because the ALJ's limited postural functions.

**Credibility**. In the absence of evidence of stenosis or nerve root compression, Heflin's allegation of disabling pain and limitation turns on his credibility. The record

---

[35]SSA record at p. 424 (L5/S1: diffuse disc bulge with central and right paracentral focal disc protrusion, mild spinal canal narrowing, moderate to severe narrowing of right neural foramen, and mild to moderate narrowing of left neural foramen; L4/5: mild diffuse bulge, bilateral facet arthropathy, mild to moderate narrowing of right neural foramen, and minimal to mild narrowing of left neural foramen).

[36]*Id*. at pp. 668-70 & 714.

[37]*Id*. at p. 45.

includes sufficient inconsistencies to support the ALJ's evaluation of Heflin's credibility.[38]

Heflin denied IV drug use when he was hospitalized for endocarditis.[39] He later admitted to sharing needles for IV drug use.[40] He insisted that he was hospitalized for 10 weeks; the record shows he was hospitalized for two weeks. Doctors attributed demands for narcotic pain medication and particular psychotropic medications to drug addiction, rather than medical symptoms.[41] He stopped seeing his PCP when she refused to further prescribe pain medications[42] and sought pain medication from a new doctor.[43]

The record reflects a history of inconsistent statements that weigh against Heflin's credibility. The ALJ properly considered the role of addiction in evaluating Heflin's credibility, because "[a] claimant's misuse of medications is a valid factor in an ALJ's

---

[38]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[39]SSA record at p. 576.

[40]*Id.* at pp. 344 & 582.

[41]*Id.* at p. 595 (clinical impression: chronic pain and drug seeking behavior); p. 630 (suspect he may be pulling out PICC line when he wants more pain medication) & p. 788 (insisting that Klonopin works for him, but per doctor, Klonopin isn't an option due to history of abuse of alcohol, cannabis, and benzodiazepines).

[42]*Id.* at p. 641.

[43]*Id.* at p. 731.

credibility determinations."[44] Contrary to Heflin's argument, the ALJ was not required to determine whether drug addiction was a contributing factor material to the determination of disability, because the ALJ concluded that Heflin is not disabled.[45]

**Mental impairment**. Although Heflin didn't base his claim on mental impairment, the ALJ ordered a mental diagnostic evaluation, likely because Heflin's PCP prescribed psychotropic medications.[46] The examiner determined that Heflin has an adequate ability to cope with the mental demands of work, although his depressed mood could interfere with some cognitive processes. The examiner observed no limitations in concentration, persistence, or pace. Heflin reported no significant problems getting along with others.[47]

A mental health expert opined that Heflin can work where interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote, involves few variables, requires little judgment, and supervision is

---

[44]*Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003).

[45]20 C.F.R. §§ 404.1535(a) & 416.935(a) ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").

[46]SSA record at p. 683.

[47]*Id*. at p. 688.

simple, direct and concrete.[48] A reasonable mind would accept the evidence as adequate to show Heflin can work within the ALJ's limitations because the ALJ adopted the mental expert's parameters.

After the ALJ issued the unfavorable decision, Heflin submitted mental health records. Those records show that treatment was a condition of Heflin's parole.[49] He was in and out of jail.[50] Heflin suggests the records reflect disabling impairment, but instead, the records reflect Heflin's efforts to obtain a particular psychotropic drug. His doctor consistently refused to prescribe that medication due to Heflin's history of drug addiction.[51] At that the time of the ALJ's decision, treatment records showed that a new medication controlled his symptoms.[52] On the record as a whole, treatment records show that Heflin's mental symptoms are controlled so long as he abstains for illicit substances and complies with treatment recommendations. "An impairment which can be controlled by treatment or medication is not considered disabling."[53]

**Vocational evidence**. Heflin's only persuasive argument flows from the

---

[48]*Id*. at p. 696.

[49]*Id*. at p. 739.

[50]*Id*. at pp. 782 & 791.

[51]*Id*. at p. 788.

[52]*Id*. at pp. 780-81.

[53]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

vocational evidence. In the past, Heflin worked at a pickle plant, operating a capping machine and working as a brine maker. The Dictionary of Occupational Titles (DOT) classifies those jobs as "medium" jobs, but in classifying Heflin's past work, the vocational expert made a mistake. The expert erroneously classified a capping-machine operator as light work, and based on Heflin's testimony, testified that Heflin did the job as "medium" work.[54] The mistake flowed an incorrect job classification code; the vocational expert identified 706.687-010 (assembler-production) as the applicable DOT code; the actual DOT code is 920.685-078 (packager, machine).

The incorrect code — "assembler-production" — falls within the ALJ's parameters because it is light work that involves occasional stooping. The incorrect code — "packager, machine" — exceeds the ALJ's parameters because it is medium work that involves occasional stooping. As a result, there is no evidence showing Heflin "is capable of performing his past work as a machine operator, production."[55]

The Commissioner's reliance on Heflin's burden — to prove he can no longer do his past work[56] — fails because the ALJ determined that Heflin can do some light work, the vocational expert relied on an incorrect DOT code, and Heflin's past jobs were

---

[54]SSA record at p. 46.

[55]*Id*. at p. 25.

[56]Docket entry # 13, p. 11.

medium or heavy work.  Although the DOT's generic classifications do not control if vocational expert testimony demonstrates jobs exist that the claimant can do,[57] the vocational testimony in this case does not make that showing.

While it seems obvious that light jobs exist that Heflin can do, substantial evidence does not support the ALJ's decision because the vocational expert testimony was based on an error.  A vocational expert's testimony must be accurate to serve as substantial evidence supporting an unfavorable decision, especially considering the DOT was last updated in 1991.

**Conclusion**.  Substantial evidence does not support the ALJ's determination that Heflin can do his past work, because the determination was based on inaccurate vocational evidence.  For this reason, the undersigned recommends REVERSING the Commissioner's decision and REMANDING this case to the Commissioner, with the following instructions: "On remand, the ALJ must obtain vocational evidence about available work.  The ALJ may obtain vocational evidence by conducting a hearing or using written interrogatories.  Once those actions are completed, the ALJ shall determine whether Heflin is entitled to disability benefits."

---

[57]*Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010).

It is so ordered this 1st day of June, 2014.

_____
United States Magistrate Judge